IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>WE THE PEOPLE USA, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case Nos. _____, *et seq.*<br>(joint administration pending) |

## DECLARATION OF ROBERT D. KATZ, CTP, CPA, MBA
## IN SUPPORT OF FIRST-DAY REQUESTS FOR RELIEF

Robert D. Katz, being over the age of eighteen years and having personal knowledge of the matters set forth herein, declares, deposes, and states as follows:

1. I am the Chief Restructuring Officer of the above-captioned debtors, We The People USA, Inc. and We The People LLC (the "Debtors"), and have served in that capacity since February 17, 2010. My duties and responsibilities include acting as the sole officer of each of the Debtors and reviewing and familiarizing myself with the operations, assets, liabilities, and financial affairs of the Debtors. Accordingly, where appropriate, the facts below are based on the books and records of the Debtors, electronic records, or compilations or summaries thereof, which are kept in the ordinary course of business. I am also a custodian of the books and records of the Debtors as they are kept in the ordinary course of business. In addition, I have reviewed the Declaration of Mark Prior in Support of First-Day Pleadings (the "Prior Declaration"), which reflects my understanding of the historical background and financial status of the Debtors at the time of my appointment as Chief Restructuring Officer. Except as otherwise expressly noted, I do not have personal knowledge of the facts set forth herein but have familiarized myself with the books and records of the Debtors. If called and sworn as a witness, it is my belief that I could and would testify competently to the facts set forth herein.

RDK

2. This declaration is submitted in connection with, and in support of, the voluntary petitions for relief filed under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and the first-day motions, pleadings, and applications filed by the Debtors in the above-captioned Chapter 11 cases (collectively, the "First Day Pleadings"). The purpose of this declaration is to acquaint the Court and other parties-in-interest with the nature of the Debtors' operations and as evidentiary support for the relief requested in the First Day Pleadings. Except as otherwise authorized by the Debtors,[1] this declaration shall not be used for any other purpose.

3. On February 19, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have managed their affairs as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

### A. Debtors' Motion for Entry of an Order Directing Joint Administration of Related Chapter 11 Cases.

4. The Debtors have filed a Motion for Entry of an Order Directing Joint Administration of Related Chapter 11 Cases. By this motion, the Debtors seek entry of an order directing joint administration of these Chapter 11 cases for procedural purposes only. The Debtors also request that the Court maintain one file and one docket for all of the jointly administered cases under the case number assigned to We The People USA, Inc. ("WTP USA") and that these Chapter 11 cases be administered under a consolidated caption.

5. The Debtors are "affiliates" as that term is defined under § 101(2) of the Bankruptcy Code. Given the integrated nature of the Debtors' operations, joint administration of

---

[1] The Debtor may withhold its authorization to use this declaration for any other purpose in its sole discretion. The Debtor may also determine, in its sole discretion, that its right and authority to grant or reject another use of this declaration may be irrevocably waived and extinguished, and any such waiver and extinction shall thereafter be binding upon itself and its successors.

these Chapter 11 cases will provide significant administrative convenience without harming the substantive rights of any party in interest. Many of the motions, hearings and orders that will arise in these cases will affect both of the Debtors. It is my understanding that the entry of an order directing joint administration of these Chapter 11 cases will therefore reduce fees and costs by avoiding duplicative filings and objections. It is also my understanding that joint administration will allow the Court, the Office of the United States Trustee for the District of Delaware, and all parties in interest to monitor these Chapter 11 cases with greater ease.

6. Based upon the foregoing, I have concluded that the joint administration of these Chapter 11 cases is in the best interests of the Debtors' estates, their creditors, and all other parties in interest.

**B. Debtors' Motion for Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals.**

7. The Debtors have filed a Motion for Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals. By this motion, the Debtors seek entry of an administrative order establishing procedures for interim compensation and reimbursement of expenses of certain professionals that the Debtors have sought to retain in various applications filed contemporaneously with this Motion or will seek to retain in subsequent applications.

8. In particular, the Debtors have sought approval of the employment of Pinckney, Harris & Weidinger, LLC as its bankruptcy attorneys and may seek authority to employ attorneys, accountants, financial advisors, investment bankers, brokers, and other professionals to assist them in the administration of this case. It will be seeking to employ Executive Sounding Board Associates Inc as its financial advisor. In addition, in the event the United States Trustee

appoints an Official Committee Of Unsecured Creditors (the "Committee") in this case, the Debtors anticipate that the Committee may seek authority to retain counsel and other professionals to assist them in fulfilling their duties to the estate. For purposes of this motion, the professionals required to submit interim and final applications are referred to as the "Professionals."

9. In this motion, the Debtors propose that the interim payment of compensation and reimbursement of expenses of the Professionals be structured in accordance with certain stated procedures (the "Compensation Procedures"). The Debtors will include all payments made to Professionals in accordance with the Compensation Procedures in their monthly operating reports, identifying the amount paid to each of the Professionals.

10. I believe that the time required on the part of the Debtors' attorneys in providing services necessary to achieve a successful reorganization justify the imposition of the Compensation Procedures.

11. Based upon my experience in Chapter 11 cases in this district, the procedures that are proposed in this motion for compensating and reimbursing court-approved professionals are consistent with those established in other Chapter 11 cases in this district and elsewhere.

12. In my opinion, the suggested Compensation Procedures will also enable the Court and key parties in interest to monitor the professional fees incurred in these Chapter 11 cases more effectively and insure the reasonableness and necessity of the compensation and reimbursement sought.

13. Moreover, the relative financial size of both the Debtors and its chosen professionals in this case is such that carrying long-term balances would cause a hardship to both client and professional alike. Similarly, the limitations upon the service of copies of voluminous

applications and time records are included to conserve the Debtors' resources and to direct notice of requests for approval of professional compensation to those parties most likely to review them.

14. Therefore, I believe that the relief requested in this motion is warranted.

C. **Debtors' Motion for Entry of an Order (I) Authorizing Postpetition Financing On A Super-Priority Basis, (II) Authorizing The Debtors' Use Of Cash Collateral, (III) Modifying The Automatic Stay, And (IV) Scheduling A Final Hearing on Debtor In Possession Financing And Use Of Cash Collateral.**

15. The Debtors have filed a Motion for Entry of an Order (I) Authorizing Postpetition Financing On A Super-Priority Basis, (II) Authorizing The Debtors' Use of Cash Collateral, (III) Modifying The Automatic Stay, And (IV) Scheduling A Final Hearing on Debtor In Possession Financing And Use Of Cash Collateral.

16. By this motion, the Debtors seek entry of an order authorizing them to incur up to $108,255 in interim postpetition financing (the "Postpetition Financing") from Dollar Financial Group, Inc. (the "DIP Lender"), the direct or indirect parent company of the Debtors, in accordance with the terms and conditions of the proposed Interim Order, Pursuant To 11 U.S.C. §§ 362, 363 And 364 And Fed. R. Bankr. P. 4001(b) And (c): (I) Authorizing Postpetition Financing On A Super-Priority Basis, (II) Authorizing The Debtors' Use Of Cash Collateral, (III) Modifying The Automatic Stay And (IV) Scheduling A Final Hearing On Debtor In Possession Financing And Use Of Cash Collateral (the "Interim Order," attached to the motion as Exhibit 1), and that certain Debtor-in-Possession Loan Agreement attached to the Interim Order as Exhibit A (the "Loan Agreement").

17. Furthermore, the Debtors seek authorization to incur Postpetition Financing in accordance with substantially the same relief proposed in the Interim Order, on a final basis.

-5-

18. Finally, the Debtors seek authorization to use any cash collateral that they might have or acquire during these Chapter 11 cases to operate their business and pay any administrative expenses that may arise.

19. Absent the proposed financing, the Debtors do not have sufficient available sources of working capital and financing to administer these Chapter 11 cases. The Postpetition Financing is in the best interests of the Debtors' estates and creditors because it is the only means at this critical juncture of preserving the Debtors' ability to restructure or to provide an orderly wind-down for franchisees and their customers. The terms of the Loan Agreement and related documents reflect good faith, arms-length negotiations and the Debtors' exercise of sound business judgment. The Debtors and DFG were represented by separate counsel during these negotiations, and the Debtors were also assisted by a Chief Restructuring Officer having no affiliation with DFG.

20. With the credit provided by the DIP Lender and any available cash, the Debtors projects to be able to obtain necessary goods and services, thereby permitting the Debtors to create funds with which to pay employees and operate or conduct an orderly wind-down of their business for the benefit of all parties-in-interest while they attempt to formulate a Chapter 11 plan.

21. The Debtors' need for financing is immediate. The Postpetition Financing should afford the Debtors the liquidity needed to operate or conduct an orderly wind-down of their business and administer these Chapter 11 cases. In the absence of the Postpetition Financing, an immediate shutdown of all aspects of the Debtors' business would be necessary and irreparable harm to the Debtors and their estates would result. Moreover, an immediate cessation of the

RDK

Debtors' operations would cause immediate and substantial disruption to franchisees and their customers, who continue to rely on the Debtors for document processing.

22. Similarly, to the extent that the Debtors have or obtain any cash during the pendency of these Chapter 11 cases that might be treated as cash collateral as defined under § 363(a) of the Bankruptcy Code, the use of such cash will reduce the need to borrow additional funds. I have discussed with We The People's counsel who has discussed with certain representatives of DFG that communicated with the only party that may have any right to assert a lien upon the Debtors' cash, and I believe that such party does not oppose the Debtors' use of cash collateral in these cases.

23. Given the Debtors' current financial condition, financing arrangements and capital structure, I believe that the Debtors cannot obtain (i) unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense; (ii) unsecured credit allowable under §§ 364(a) and 364(b) of the Bankruptcy Code, or (iii) secured credit pursuant to § 364(c) of the Bankruptcy Code on terms and conditions more favorable to the Debtors' estates than those offered by the DIP Lender, as evidenced by the relief requested herein and the Loan Agreement. I also believe that financing on a postpetition basis is not otherwise available without (i) granting, pursuant to § 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in §§ 326, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a) and 507(b) of the Bankruptcy Code, subject to the Carve-Out described below.

24. It is my understanding that the DIP Lender is not willing to extend postpetition financial accommodations unless the DIP Lender is granted in connection with all Obligations of Debtors under the Loan Agreement and the Interim Order, pursuant to § 364(c)(1) of the

Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in §§ 326, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a) and 507(b) of the Bankruptcy Code (the "Superpriority Claims"), subject only to the Carve-Out.

25. Based on the foregoing, the Debtors submit that the Postpetition Financing has been negotiated in good faith and at arms' length by and between the Debtors and the DIP Lender and any credit extended and loans made pursuant to the Loan Agreement should be deemed to have been extended, issued, or made, as the case may be, in good faith by the DIP Lender, as required by, and within the meaning of, § 364(e) of the Bankruptcy Code.

26. I also believe that the terms of the Postpetition Financing are fair and reasonable, are appropriate for financing offered to a debtor-in-possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

27. I also believe that the DIP Lender is relying on the relief proposed in the Interim Order in entering into the Loan Agreement and providing Loans to the Debtors there under. Absent approval of the Postpetition Financing on an interim basis, it is my understanding that the DIP Lender would not provide the Postpetition Financing to the Debtors.

28. Permission to obtain the Postpetition Financing and to use any cash constituting cash collateral in accordance with the Interim Order is necessary to avoid immediate and irreparable harm to the Debtors. Therefore, entry of the Interim Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, provide the Debtors with the necessary liquidity to enhance their prospects for the successful administration of these Chapter 11 cases.

RDK

29. Paragraph 7 of the Interim Order contains provisions limiting the rights that the Debtors' estates may have under 11 U.S.C. § 506(c) upon entry of a final order authorizing the Postpetition Financing. This relief is justified because (i) the DIP Lender has advised the Debtors that it will be unwilling to extend the financing if it has exposure in accordance with § 506(c) of the Bankruptcy Code; and (ii) the Debtors believe that the Budget provides for the reasonably anticipated expenses of administering these cases.

30. Paragraph 10 of the Interim Order contains a carve-out for the attorneys' fees and costs of both the Debtors and any official committee of unsecured creditors appointed in these cases. The provision limits the respective carve-outs to the amounts listed on the Budget, less any retainers and post-petition payments. The provision also creates a carve-out from the DIP Lender's claim for the payment to the Debtors' attorneys of a fee (up to $5,000) for winding up the Debtors' affairs in the event that certain contingencies necessitate such winding up.

31. The interim relief requested in this motion is necessary to prevent "immediate and irreparable harm" to the Debtors. The Debtors' ability to pay their operating expenses while in Chapter 11 is essential to any successful outcome of this reorganization. A disruption of payment of such expenses, even for a very short time, would create a serious risk of, among other things, damaging the Debtors' relationship with its employees and possibly preventing the Debtors from conducting business.

**D. Debtors' Motion for Entry of an Order Appointing BMC Group, LLC as Claims And Noticing Agent.**

32. The Debtors have filed a Motion for Entry of an Order Appointing BMC Group, LLC as Claims And Noticing Agent. By this motion, the Debtors seek entry of an order authorizing them to retain and employ BMC Group, Inc. as claims and noticing agent (the "Claims Agent") to, among other tasks, (i) transmit certain designated notices to appropriate

parties as required by the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (ii) maintain copies of all proofs of claim and proofs of interest filed in these cases; (iii) maintain the official claims registers; and (iv) assist the Debtors with the dissemination of solicitation materials relating to any claims management procedures and deadlines in these cases.

33. I believe that the retention of the Claims Agent as claims and noticing agent in these cases will promote the economical and efficient administration of their estates. Utilizing the Claims Agent in these cases will allow the Debtors to avoid duplication in claims administration and in providing notices to their creditors. Additionally, the large number of creditors, potential creditors, and other parties in interest involved in the Debtors' Chapter 11 cases would almost certainly impose heavy administrative and other burdens upon the Court and the Clerk of the Court. To relieve the Court and the Clerk of these burdens, the Debtors propose to engage the Claims Agent in their Chapter 11 cases.

34. I am advised that the Claims Agent is a data processing firm that specializes in Chapter 11 administration and related tasks, including noticing, claims processing, voting and other administrative tasks in Chapter 11 cases. The Debtors desire to engage the Claims Agent to send out certain designated notices and to maintain claims files and a claims and voting register. I believe that such assistance will expedite service of notices, streamline the claims administration process, and permit the Debtors to focus on their reorganization efforts.

35. I am further advised that the Claims Agent is well qualified to provide such services, expertise, consultation, and assistance. I am informed that the Claims Agent has assisted numerous Chapter 11 debtors in connection with noticing, claims administration, and reconciliation and administration of plan votes. The Claims Agent has advised me that it has

provided identical or substantially similar services in other significant Chapter 11 cases in this and other districts.

36. In addition to the bona fide creditors in these Chapter 11 cases, there is currently class action litigation pending against the Debtors. The Debtors expect that at least some of these creditors—which are mostly consumers—may file proofs of claim in these cases. Even if the number of proofs of claim filed is ultimately not great, the Debtors expect that the claims process may involve transmitting tens of thousands of notices to potential parties in interest. This would presumably be unduly time-consuming and burdensome for the Clerk's Office.

37. To the best of my knowledge, the members and employees of the Claims Agent (i) do not have any adverse connection with the Debtors, the Debtors' creditors or any other party in interest or their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, and (ii) do not hold or represent an interest adverse to the Debtors' estates.

38. It has been represented to me that the Claims Agent is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that its members and employees: (a) are not creditors, equity security holders or insiders of the Debtors; and (b) are not and were not, within 2 years before the date of the fling of the petition, a director, officer, or employee of the Debtors.

39. Prior to the Petition Date, the Claims Agent may have performed certain services for the Debtors. The Debtors do not owe the Claims Agent any amount for services performed or expenses incurred prior to the Petition Date.

40. For all of the foregoing reasons, I believe that the retention of the Claims Agent as the claims and noticing agent is appropriate and in the best interests of the Debtors, their estates, and creditors.

### F. Application for Authority To Employ Pinckney, Harris & Weidinger, LLC as Counsel for the Debtors.

41. The Debtors have filed an Application for Authority To Employ Pinckney, Harris & Weidinger, LLC (the "Firm") as Counsel for the Debtors. By this application, the Debtors seek entry of an order approving the Debtors' retention of the Firm as its bankruptcy counsel in these Chapter 11 cases.

42. It is my understanding that the principal attorneys assisting the Debtors have extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code, as well as expertise, experience, and knowledge in practicing before this Court.

43. Moreover, the Firm's billing rates are very competitive. I am informed that the hourly rates to be charged to the Debtors are within the range of the Firm's standard hourly rates for work of this nature by the professionals identified. These rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and para-professionals and to cover fixed and routine overhead expenses.

44. Accordingly, I believe that the Firm is both well-qualified and uniquely able to represent it in these Chapter 11 cases in an efficient and timely manner.

45. To begin its representation of the Debtors, the Firm collected retainers totaling $100,000, which were paid by DFG and remain property of DFG to the extent that they are not earned. It is my understanding that on the Petition Date, after having applied such retainer to its prepetition invoice, the Firm was holding additional funds on retainer (the "Prepetition

Retainer"). To the extent that any funds remain on retainer when the Firm has finished providing services to the Debtors, such funds will be refunded to DFG and are not property of the Debtors' estates.

46. I have reviewed the Declaration of Adam Hiller in Support of Debtors' Application For Authority to Employ Pinckney, Harris & Weidinger, LLC as Counsel, attached to this application as Exhibit A (the "Hiller Affidavit"), and based on that and my discussions with Mr. Hiller, I believe that the Firm is a disinterested person and does not have any materially adverse interest to the Debtors' estate

47. As disclosed in the Hiller Affidavit, the Firm currently represents, and may in the future represent, Wells Fargo Bank, N.A., in a mechanic's lien action in the Superior Court of Delaware for New Castle County and the Supreme Court of Delaware unrelated to the Debtors or these Chapter 11 cases. Wells Fargo Bank, N.A. acts as the administrative agent for a consortium of lenders on account of a DFG loan facility guaranteed by the Debtors. It is the Debtors' understanding that Wells Fargo is aware of these bankruptcy proceedings and it has been represented to me that Wells Fargo Bank, N.A. does not intend to participate in these cases in any meaningful manner. Therefore, it does not appear that the Debtors will have any dispute with Wells Fargo in these cases. In the remote event that a dispute arises between the Debtors and Wells Fargo, the Firm has advised me that the Debtors may need to retain separate counsel to represent them in such dispute. The Debtors have consented to the foregoing contingency.

48. Therefore, I believe that the employment of the Firm is in the best interests of the Debtors and their estates. The Debtors are seeking approval *nunc pro tunc* to the Petition Date because the Debtors' bankruptcy estates began using the Firm's services on that date.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING
IS TRUE AND CORRECT.

Dated: 2/19/2010           by: _____
                               Robert D. Katz, Chief Restructuring Officer