IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>WE THE PEOPLE USA, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case Nos. _____, *et seq.*<br>(joint administration pending) |

**DEBTORS' MOTION FOR ENTRY OF ORDER
(I) AUTHORIZING POSTPETITION FINANCING
ON A SUPER-PRIORITY BASIS, (II) AUTHORIZING THE
DEBTORS' USE OF CASH COLLATERAL, (III) MODIFYING
THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING
ON DEBTOR IN POSSESSION FINANCING AND USE OF CASH COLLATERAL**

We The People USA, Inc. and We The People LLC (the "Debtors"), as debtors and debtors in possession, by their proposed undersigned attorneys, file this Motion for Entry of an Order (I) Authorizing Postpetition Financing On A Super-Priority Basis, (II) Authorizing The Debtors' Use Of Cash Collateral, (III) Modifying The Automatic Stay, And (IV) Scheduling A Final Hearing on Debtor In Possession Financing And Use Of Cash Collateral, in reliance upon the Declaration of Mark Prior in Support of First-Day Requests for Relief and the Declaration of Robert D. Katz in Support of First-Day Requests for Relief filed concurrently herewith (the "Declarations"), and in support hereof state as follows:

JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On February 19, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have managed their affairs as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. In March 2005, We The People USA, Inc. ("WTP USA") acquired substantially all the assets of the We The People franchise system. In July 2007, We The People LLC ("WTP LLC"), a wholly-owned subsidiary of WTP USA, was assigned and assumed certain assets and obligations of WTP USA. The Debtors operate a business providing document preparation services to unrepresented persons throughout certain areas of the United States in uncontested legal matters such as divorces, trusts, incorporations, wills, and powers of attorney. The Debtors' business model consists of a document processing operation that receives orders from independent We The People franchisees, completes a typed document in accordance with the orders, and returns the document to the franchisee for a document processing fee. The Debtors also provide "fill-in the blank" form documents to We The People franchisees for sale to the general public. The Debtors operate strictly as a franchise system, and do not themselves operate any We The People stores.

4. The Debtors have been unable to operate their business model profitably since the business was acquired, in part as a result of the expense of litigation initiated by certain past and present franchisees and customers of franchisees. While the Debtors believe that they have meritorious defenses to those actions, overwhelming defense and legal costs have contributed to the Debtors' substantial operating losses. In 2009, the Debtors suffered a net loss of $2,428,019

on gross revenues of approximately $1,379,609. By the end of 2009, the Debtors' monthly operating revenues were down to approximately $13,185.75.

5. Because the Debtors were unable to meet their expenses with operational cash flow before the Petition Date, they relied upon unsecured intercompany loans from Dollar Financial Group, Inc. ("DFG"), the parent company of WTP USA. On the Petition Date, the total amount owed to DFG by the Debtors was approximately $38 million.

6. Over the last year, most of the Debtors' franchises have closed, either as a result of unilateral closure by the franchisee or by virtue of a franchise termination agreement. On the Petition Date, the Debtors had eight remaining operating franchisees. Those franchisees operate a total of eight stores, located in New York, California, Missouri, and Utah.

7. The Debtors have filed these Chapter 11 cases in order to (i) operate or conduct an orderly wind-down of their business for the benefit of all parties-in-interest while they attempt to formulate a Chapter 11 plan, (ii) preserve any value in their intellectual property and other assets for the benefit of their estates, and (iii) minimize the impact of any wind-down on franchisees and their customers.

RELIEF REQUESTED AND BASIS THEREFOR

8. Pursuant to 11 U.S.C. §§ 362, 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), the Debtors seek entry of an order authorizing them to incur postpetition financing (the "Postpetition Financing") on an interim basis up to $108,255.00 from Dollar Financial Group, Inc. (the "DIP Lender"), the direct or indirect parent company of the Debtors, in accordance with the terms and conditions of the proposed Interim Order, Pursuant To 11 U.S.C. §§ 362, 363 And 364 And Fed. R. Bankr. P. 4001(b) And (c): (I) Authorizing Postpetition Financing On A Super-Priority Basis, (II) Authorizing The Debtors' Use Of Cash Collateral, (III) Modifying The

Automatic Stay And (IV) Scheduling A Final Hearing On Debtor In Possession Financing And Use Of Cash Collateral (the "Interim Order," attached hereto as **Exhibit 1**), and that certain Debtor-in-Possession Loan Agreement attached to the Interim Order as Exhibit A (the "Loan Agreement").

9. Furthermore, the Debtors seek authorization to incur Postpetition Financing in accordance with substantially the same relief proposed in the Interim Order, on a final basis, up to the amount of $371,964.00.

10. Finally, the Debtors seek authorization to use any cash collateral that they might have or acquire during these Chapter 11 cases to operate their business and pay any administrative expenses that may arise.

11. As evidenced by the Declarations, the Debtors do not have sufficient available sources of working capital and financing to administer these Chapter 11 cases. The Postpetition Financing is in the best interests of the Debtors' estates and creditors because it is the only means at this critical juncture of preserving the Debtors' ability to restructure or to provide an orderly wind-down for franchisees and their customers. Based on the record presented by the Debtors, the terms of the Loan Agreement and related documents reflect good faith, arms-length negotiations and the Debtors' exercise of sound business judgment.

12. With the credit provided by the DIP Lender and any available cash, the Debtors will be able to obtain necessary goods and services, thereby permitting the Debtors to create funds with which to pay employees and operate or conduct an orderly wind-down of their business for the benefit of all parties-in-interest while they attempt to formulate a Chapter 11 plan.

13. The Debtors' need for financing is immediate. The Postpetition Financing will afford the Debtors the liquidity needed to operate or conduct an orderly wind-down of their business and administer these Chapter 11 cases. In the absence of the Postpetition Financing, an immediate shutdown of all aspects of the Debtors' business would be necessary and irreparable harm to the Debtors and their estates would result. Moreover, an immediate cessation of the Debtors' operations would cause immediate and substantial disruption to franchisees and their customers, who continue to rely on the Debtors for document processing.

14. Similarly, to the extent that the Debtors have or obtain any cash during the pendency of these Chapter 11 cases that might be treated as cash collateral as defined under § 363(a) of the Bankruptcy Code, the use of such cash will reduce the need to borrow additional funds. The Debtors believe that the only party that may have any right to assert a lien upon the Debtors' cash consents to (or at least does not oppose) the Debtors' use of cash collateral in these cases.

15. Given the Debtors' current financial condition, financing arrangements and capital structure, the Debtors cannot obtain (i) unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense; (ii) unsecured credit allowable under §§ 364(a) and 364(b) of the Bankruptcy Code, or (iii) secured credit pursuant to § 364(c) of the Bankruptcy Code on terms and conditions more favorable to the Debtors' estates than those offered by the DIP Lender, as evidenced by the relief requested herein and the Loan Agreement. Financing on a postpetition basis is not otherwise available without (i) granting, pursuant to § 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in §§ 326, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a) and 507(b) of the Bankruptcy Code, subject to the Carve-Out described below.

16. The DIP Lender is not willing to extend postpetition financial accommodations unless the DIP Lender is granted in connection with all Obligations of Debtors under the Loan Agreement and the Interim Order, pursuant to § 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in §§ 326, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a) and 507(b) of the Bankruptcy Code (the "Superpriority Claims"), subject only to the Carve-Out.

17. The Debtors submit that the Postpetition Financing has been negotiated in good faith and at arms' length by and between the Debtors and the DIP Lender and any credit extended and loans made pursuant to the Loan Agreement should be deemed to have been extended, issued, or made, as the case may be, in good faith by the DIP Lender, as required by, and within the meaning of, § 364(e) of the Bankruptcy Code.

18. The Debtors further submit that the terms of the Postpetition Financing are fair and reasonable, are appropriate for financing offered to a debtor-in-possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

19. The Debtors believe that the DIP Lender is relying on the relief proposed in the Interim Order in entering into the Loan Agreement and providing Loans to the Debtors thereunder. Absent approval of the Postpetition Financing on an interim basis, the DIP Lender would not provide the Postpetition Financing to the Debtors.

20. The Debtors are requesting immediate entry of the Interim Order pursuant to Fed. R. Bankr. P. 4001(b)(2) and 4001(c)(2). Permission to obtain the Postpetition Financing and to use any cash constituting cash collateral in accordance with the Interim Order is necessary to avoid immediate and irreparable harm to the Debtors. The Debtors therefore submit that entry of

the Interim Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, provide the Debtors with the necessary liquidity to enhance their prospects for the successful administration of these Chapter 11 cases.

21. The following recitals pertaining to the Debtors' proposal to incur postpetition financing in accordance with the Interim Order are made pursuant to Del.Bankr. LR 4001-2(a)(i):

    A. The Interim Order does not contain any provision that grants cross-collateralization protection to the holders of prepetition liens on the Debtors' assets.

    B. The Interim Order does not contain findings of fact regarding prepetition liens or prepetition claims that bind the Debtors or their estates without first giving parties in interest at least 75 days from the entry of the order and the Committee, if formed, at least 60 days from the date of its formation to investigate such matters. The Loan Agreement and Interim Order provide for releases for the DIP Lender and its affiliates, subject to entry of the Final Order and to customary third-party investigation rights for an official committee of unsecured creditors and other parties in interest.

    C. Paragraph 7 of the Interim Order contains provisions limiting the rights that the Debtors' estates may have against the DIP Lender under 11 U.S.C. § 506(c) upon entry of a final order authorizing the Postpetition Financing. This relief is justified because (i) the DIP Lender has advised the Debtors that it will be unwilling to extend the financing if it has exposure in accordance with § 506(c) of the Bankruptcy Code; and (ii) the Debtors believe that the Budget (as defined below) provides for the reasonably anticipated expenses of administering these cases. Because the DIP Lender is not acquiring a lien on any of the Debtors' assets to secure the

Debtors' obligations under the Postpetition Financing, the Debtors are uncertain that they would otherwise have any rights against the DIP Lender under § 506(c).

D. The Interim Order does not contain provisions that immediately grant to any prepetition secured creditor liens on the Debtors' claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549.

E. The Interim Order does not contain any provision that deems prepetition secured debt to be postpetition debt or that uses postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt.

F. Paragraph 10 of the Interim Order contains a carve-out for the attorneys' fees and costs of both the Debtors and any official committee of unsecured creditors appointed in these cases. The provision limits the respective carve-outs to the amounts listed on the budget attached to the Interim Order as Exhibit B (the "Budget"), less any retainers and post-petition payments. The amount in the Budget for professionals of the Committee is $16,000 over the 15-week period, while the amount in the Budget for the Debtors' attorneys and financial advisors totals $100,000. This is justified by the fact that the Debtors selected their counsel specifically because of the firm's lower fee structure, and the Debtors expect that any professionals hired by the Committee should either have a comparable fee structure or be willing to limit its fees accordingly. Moreover, a debtor's professionals traditionally take a greater role in administering a Chapter 11 case than a committee's professional does, so the amount of a carve-out applicable to a debtor's professional should be greater. The provision also creates a carve-out from the DIP Lender's claim for the payment to the Debtors' attorneys of a fee for winding up the Debtors' affairs in the event that certain contingencies necessitate such winding up. This is justified by

the fact that in the event that the Debtors' cases were converted to Chapter 7 of the Bankruptcy Code, there would be no further need for professionals of the Committee to incur fees.

G. The Interim Order does not prime the secured liens existing on the Debtors' assets as of the Petition Date, except only to the extent that they are invalid, unperfected or avoidable.

22. Pursuant to Del.Bankr. LR 4001-2(a)(ii), the following is a summary of the essential terms of the financing and use of cash collateral proposed in the Interim Order:

  (A) Financing will be extended by the DIP Lender to the Debtors upon the Debtors' submission of requests for payment, supported by a certification from the Debtors as to agreed representations and warranties.

  (B) Loans will be made in accordance with the Budget, subject to a 10% variance from the budgeted amounts.

  (C) Interest will accrue upon the unpaid balance at the rate of 8% per annum, payable on demand. Other fees and charges will be assessed against the Debtors, including but not limited to payment of the DIP Lender's attorneys' fees and costs.

  (D) The entire balance of the loans shall come due and payable on the Maturity Date of June 30, 2010, or upon the occurrence of an earlier event of default, among which are: (i) that the Debtors have not filed a plan on or before March 31, 2010; (ii) the conversion or dismissal of these cases; (iii) a sale of substantially all of the Debtors' assets; or (iv) entry of a confirmation order.

  (E) Cash collateral, if any, may be used by the Debtors to the extent of any expenses set forth in the Budget.

23. Fed. R. Bankr. P. 6003 requires that any request by the debtor to use property of the estate within 20 days of the Petition Date, be predicated upon a showing that such relief would prevent "immediate and irreparable harm" to the debtor. As evidenced by the Declarations, the Debtors' ability to pay their operating expenses while in Chapter 11 is essential to any successful outcome of this reorganization. A disruption of payment of such expenses,

even for a very short time, would create a serious risk of, among other things, damaging the Debtors' relationship with its employees and possibly preventing the Debtors from conducting business. For these reasons, the Debtors submit that the requirements of Fed. R. Bankr. P. 6003 are satisfied with respect to this motion.

24. Notice of this Motion and the hearing thereupon is being given by mail to: (i) the Office of the United States Trustee; (ii) all parties who have filed requests for notice under Fed. R. Bankr. P. 2002 as of the date of service of such notice; (iii) counsel for the DIP Lender; (iv) the twenty (20) largest unsecured creditors of the Debtors at their last known addresses; and (v) all known secured parties. Such notice of the Hearing and the relief requested in the Motion complies with the requirements of §§ 102(1), 364(c) and 364(d) of the Bankruptcy Code and Fed. R. Bankr. P. 2002 and 4001(c) and constitutes adequate notice under the circumstances

WHEREFORE, the Debtors respectfully request that the Court enter an order:

(A) Authorizing the Debtors to incur the Postpetition Financing and use cash collateral in accordance with the terms and conditions of the proposed Interim Order, including but not limited to the Loan Agreement, up to $108,255 on an interim basis;

(B) Authorizing the Debtors to incur Postpetition Financing and use cash collateral in accordance with substantially the same relief proposed in the Interim Order, up to $371,964.00 on a final basis; and

(C)    Granting the Debtors such further relief as this Court deems just and proper.

Dated: February 19, 2010  
       Wilmington, Delaware

Respectfully submitted,

PINCKNEY, HARRIS & WEIDINGER, LLC

 /s/ Adam Hiller
Adam Hiller (DE No. 4105)
Donna Harris (DE No. 3740)
1220 North Market Street, Suite 950
Wilmington, Delaware 19801
(302) 504-1497 telephone
(302) 442-7046 facsimile

*Proposed attorneys for the Debtors*