# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>WE THE PEOPLE USA, INC., *et al.,*<br><br>Debtors. | Chapter 11<br><br>Case Nos. _____, *et seq.*<br>(joint administration pending) |

**INTERIM ORDER (I) AUTHORIZING POSTPETITION
FINANCING ON A SUPER-PRIORITY BASIS, (II) AUTHORIZING
THE DEBTORS' USE OF CASH COLLATERAL, (III) MODIFYING
THE AUTOMATIC STAY AND (IV) SCHEDULING A FINAL HEARING ON
<u>DEBTOR IN POSSESSION FINANCING AND USE OF CASH COLLATERAL</u>**
*(relates to Docket No. \_\_\_)*

UPON CONSIDERATION OF the Debtors' Motion For Authority To Incur Postpetition Financing on a Super-Priority Basis, To Use Cash Collateral, and To Modify The Automatic Stay (the "Motion"), filed by We The People USA, Inc. and We The People LLC (the "Debtors"), as debtors and debtors in possession, and any responses filed thereto; it is hereby FOUND AND DETERMINED as follows:[1]

A. On February 19, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have managed their affairs as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

B. This Court has jurisdiction over these Chapter 11 cases and the relief set forth herein pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue lies properly with this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

---

[1] Findings of facts shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

C. The Debtors have informed the Court that they intend to seek a final order authorizing the Debtors to incur up to $371,964.00 in postpetition financing (the "Postpetition Financing") from Dollar Financial Group, Inc. (the "DIP Lender"), the direct or indirect parent company of the Debtors, in accordance with the terms and conditions of a loan agreement substantially in the form attached hereto as **Exhibit A** (the "Loan Agreement").

D. The Debtors do not have sufficient available sources of working capital and financing to administer these Chapter 11 cases. The Postpetition Financing is in the best interests of the Debtors' estates and creditors because it is the only means at this critical juncture of preserving the Debtors' ability to restructure. Based on the record presented by the Debtors, the terms of the Loan Agreement and related documents reflect good faith, arms-length negotiations and the Debtors' exercise of sound business judgment.

E. With the credit provided by the DIP Lender, the Debtors will be able to obtain necessary goods and services, thereby permitting the Debtors to create funds with which to pay employees and operate or conduct an orderly wind-down of their business for the benefit of all parties-in-interest while they attempt to formulate a Chapter 11 plan.

F. The Debtors' need for financing and the use of cash collateral is immediate. The Postpetition Financing will afford the Debtors the liquidity needed to operate or conduct an orderly wind-down of their business and administer these Chapter 11 cases. In the absence of the Postpetition Financing and the use of cash, an immediate shutdown of al aspects of the Debtors' business would be necessary and irreparable harm to the Debtors and their estates would result.

G. Given the Debtors' current financial condition, financing arrangements and capital structure, the Debtors cannot obtain (i) unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense; (ii) unsecured credit allowable under §§ 364(a) and 364(b) of the Bankruptcy Code, or (iii) secured credit pursuant to § 364(c) of the Bankruptcy Code

on terms and conditions more favorable to the Debtors' estates than those offered by the DIP Lender, as evidenced by this Interim Order and the Loan Agreement. Financing on a postpetition basis is not otherwise available without granting, pursuant to § 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in §§ 326, 330, 331, 503(b), 507(a) and 507(b) of the Bankruptcy Code, subject to the Carve-Out described below.

H. The DIP Lender is not willing to extend postpetition financial accommodations unless the DIP Lender is granted a super-priority claim, subject only to the Carve Out.

I. Based on the record made by the Debtors before this Court, the Postpetition Financing has been negotiated in good faith and at arms' length by and between the Debtors and the DIP Lender and any credit extended and loans made pursuant to the Loan Agreement is deemed to have been extended, issued, or made, as the case may be, in good faith by the DIP Lender, as required by, and within the meaning of, § 364(e) of the Bankruptcy Code.

J. Based on the record made by the Debtors before this Court, the terms of the Postpetition Financing are fair and reasonable, are appropriate for a financing offered to a debtor-in-possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

K. The DIP Lender is relying on this Interim Order in entering into the Loan Agreement and providing Loans to the Debtors thereunder. Absent the approvals granted herein, the DIP Lender would not provide the Postpetition Financing to the Debtors.

L. The Debtors have requested immediate entry of this Interim Order pursuant to Fed. R. Bankr. P. 4001(b)(2) and 4001(c)(2). The permission granted herein to obtain the Postpetition Financing is necessary to avoid immediate and irreparable harm to the Debtors. The Court concludes that entry of this Interim Order is in the best interests of the Debtors' estates and creditors

as its implementation will, among other things, provide the Debtors with the necessary liquidity to enhance their prospects for the successful administration of these Chapter 11 cases.

M. Notice of the Hearing and the relief requested in the Motion was given to (i) the Office of the United States Trustee; (ii) all parties who have filed requests for notice under Fed. R. Bankr. P. 2002 as of the date of service of such notice; (iii) counsel for the DIP Lender; (iv) the twenty (20) largest unsecured creditors of the Debtors at their last known addresses; and (v) all known secured parties. Such notice of the Hearing and the relief requested in the Motion complies with the requirements of §§ 102(1), 364(c) and 364(d) of the Bankruptcy Code and Fed. R. Bankr. P. 2002 and 4001(c) and constitutes adequate notice under the circumstances; and

N. This Court held a preliminary hearing on the relief requested in the Motion on _____, 2010 (the "Preliminary Hearing"), and the relief set forth herein is granted in order to avoid irreparable injury to the Debtors, their estates, and their creditors before a final hearing could be held in accordance with Fed. R. Bankr. P. 4001(c).

BASED UPON the foregoing findings and conclusions, and upon the record made before this Court at the Preliminary Hearing, and good and sufficient cause appearing therefor, it is hereby **ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1. The Motion be, and it hereby is, GRANTED, subject to the terms and conditions set forth in this Interim Order. All capitalized terms not otherwise defined herein shall have the respective meanings set forth in the Motion. Any objections to the relief granted hereby that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

2. The Debtors are authorized and empowered to execute and deliver the Loan Agreement any other documents related thereto (the "Loan Documents"). The Debtors are authorized and directed to comply with and perform all of the terms and conditions of the Loan

Documents and the Debtors are authorized and directed to repay amounts borrowed and reimburse obligations incurred, with interest, to the DIP Lender in accordance with and subject to the terms and conditions set forth in the Loan Documents and this Interim Order. The Debtors are further authorized and directed to pay all fees and expenses, including, without limitation, all reasonable fees and expenses of professionals engaged by the DIP Lender, subject to and in accordance with the terms of the Loan Documents. The Debtors' obligations in connection with all of the Loans and interest thereon, together with all other obligations under the Loan Agreement, and all fees, costs, expenses, indebtedness, obligations, and liabilities of the Debtors to the DIP Lender under the Loan Documents and this Interim Order are hereinafter referred to as the "Obligations."

3. (a) The Debtors are authorized to borrow money from the DIP Lender, during the period from the Petition Date through and including the date on which the final hearing on the Motion (the "Final Hearing") is actually concluded (the "Interim Financing Period"), and on the terms and subject to the conditions set forth in the Loan Agreement and this Interim Order, up to an aggregate principal amount of $108,255.00, on an interim basis.

(b) To the extent that the Debtors have, or acquire during these Chapter 11 cases, any assets constituting cash collateral, as defined by § 363(a) of the Bankruptcy Code, the Debtors are authorized to use such assets for during the period from the Petition Date through and including the date of the Final Hearing, on the terms and subject to the conditions set forth in this Interim Order, including but not limited to the Budget (as defined below) up to an aggregate principal amount of $108,255.00 (less any amounts borrowed under the Loan Agreement).

4. The Debtors are authorized and directed to use the proceeds of the Loans and/or any cash collateral in conformity and compliance with the Loan Agreement, the budget attached hereto as **<u>Exhibit B</u>** (the "Budget"), and this Interim Order, up to an aggregate principal amount of $108,255.00, on an interim basis.

5. Notwithstanding anything herein to the contrary, no portion of the Loans, the Collateral, the Carve-Out (as defined below), or any cash collateral shall be used to commence or prosecute any action or objection against or with respect to (i) the DIP Lender or its affiliates, the Obligations, or the Superpriority Claims (as each is defined below) granted to the DIP Lender pursuant to the Loan Agreement and this Interim Order; or (ii) any Liens (as defined below) upon any of the Debtors' assets on the Petition Date ("Prepetition Liens"), provided that nothing in this paragraph shall prohibit the investigation of Prepetition Liens and claims related thereto.

6. Upon the Maturity Date (as defined in the Loan Agreement, including any Maturity Date or Termination Date resulting from the occurrence of an Event of Default (as also defined in the Loan Agreement)), the DIP Lender may terminate the Postpetition Financing (the date of any such termination, the "Termination Date") and declare the Loans to be due and payable, and the automatic stay pursuant to § 362(a) of the Bankruptcy Code shall be deemed lifted and modified, without further order of this Court, effective five (5) business days after notice has been received by the counsel for the Debtors, counsel for the U.S. Trustee for Region 3, and counsel for any official committee appointed in the above-captioned Chapter 11 cases (a "Committee") to permit the DIP Lender to exercise any and all of its rights and remedies under the Loan Documents and this Interim Order.

7. In accordance with § 364(c)(1) of the Bankruptcy Code, subject to the terms of this Interim Order and the Carve-Out (as defined below), the Obligations shall constitute claims (the "Superpriority Claims") with priority in payment over any and all other obligations, liabilities, and indebtedness of the Debtors now existing or hereinafter incurred by the Debtors and over any and all administrative expense or priority claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, §§ 326, 330, 331, 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a) and 507(b) of the Bankruptcy Code, and shall at

all times be senior to the rights of the Debtors, their estates, and any successor trustee or any creditor, in these Chapter 11 cases or any subsequent proceeding under the Bankruptcy Code. Subject only to the Carve-Out, no cost or expense of administration under §§ 105, 326, 328, 330, 331, 364(c)(1), 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c) or 726 of the Bankruptcy Code or otherwise, including those resulting from the conversion of these Chapter 11 cases pursuant to § 1112 of the Bankruptcy Code, shall be senior to, or pari passu with, the Superpriority Claims of the DIP Lender.

8. [Intentionally omitted].

9. Any Lien upon Property which is avoided or otherwise preserved for the benefit of the Debtors' estates under § 551 or any other provision of the Bankruptcy Code, and any proceeds thereof, shall be subordinate to the Superpriority Claims granted to the DIP Lender. No Superpriority Claim granted hereunder to the DIP Lender shall be subject to subordination to any security interests, Liens, or claims under § 510 of the Bankruptcy Code or otherwise except as otherwise agreed by the DIP Lender in writing. No postpetition Lien on any property of the Debtors' estates shall be granted without the prior indefeasible payment in full of all Obligations. Subject only to the Carve-Out, any Net Cash Proceeds received by the Debtors or their estates immediately shall be paid to Lender to the extent of any outstanding Obligations.

10. As set forth in the Loan Agreement, the Superpriority Claims granted to the DIP Lender pursuant to the Loan Agreement, the other Loan Documents, and this Interim Order, are subject and subordinate only to a carve-out (the "Carve-Out") for payment of (a) the accrued professional fees and disbursements allowed by order of the Bankruptcy Court and incurred prior to the date of an Event of Default by (1) the professionals retained by the Debtors under § 327(a) and (e) of the Bankruptcy Code, and (2) the professionals retained under § 1103(a) of the Bankruptcy Code by any statutory official committee of unsecured creditors appointed in these cases, in an

aggregate amount not to exceed the aggregate amount budgeted for the fees and expenses of such professionals for the period from the Petition Date to the date of an Event of Default, less retainers held by any such professionals as of the Petition Date; (b) the Post-Default Fee (as defined in the Loan Agreement) payable to Pinckney, Harris & Weidinger, LLC, (c) the unpaid compensation and reimbursable out-of-pocket expenses owed by the Debtors to Executive Sounding Board Associates, Inc. ("ESBA"), in an aggregate amount not to exceed the aggregate amount budgeted for the fees and expenses of ESBA for the period from the Petition Date to the date of an Event of Default, less any retainers held by ESBA as of the Petition Date, (d) the payment of unpaid fees pursuant to 28 U.S.C. § 1930; and (e) any fees payable to the Clerk of the Bankruptcy Court. As long as no Event of Default shall have occurred and be continuing, and subject to the provisions of the Loan Documents, the Debtors shall be permitted to pay, as the same may become due and payable, compensation and reimbursement of expenses to professionals allowed and payable under 11 U.S.C. §§ 330 and 331, and the amount so paid shall reduce the Carve-Out. For purposes of this paragraph only, an "Event of Default" shall mean the date that each respective professional or other person receives actual notice of an Event of Default.

11. So long as there are any Obligations outstanding to the DIP Lender under the Loan Agreement, and unless the DIP Lender agrees otherwise in writing, and without limiting the Events of Default set forth in the Loan Agreement, it shall constitute an Event of Default (and automatic occurrence of the Termination Date) if (a) the Debtors seek entry of, or there shall be entered, any order dismissing or converting any of the above-captioned Chapter 11 cases, or (b) except as expressly permitted under the Loan Agreement, the Debtors shall seek entry of, or there shall be entered, any order in any of the above-captioned Chapter 11 cases which authorizes under any section of the Bankruptcy Code, including, without limitation, §§ 105 or 364 of the Bankruptcy Code: (i) the use of cash collateral or the sale, use, or lease of other property of the Debtors in

which the DIP Lender has an interest, other than in the ordinary course of business or as provided for in the Loan Agreement; (ii) the granting of any Lien upon any property of the Debtors in favor of any party other than the DIP Lender; or (iii) the obtaining of credit or the incurring of indebtedness that is entitled to priority equal or superior to that granted to the DIP Lender pursuant to this Interim Order; unless, in connection with any transaction cited in clause (i), (ii), or (iii) of this paragraph 11, such order requires that the Obligations and any Superpriority Claims to which the DIP Lender may be entitled shall first be indefeasibly paid in full.

12. Payment of all of the DIP Lender's reasonable attorneys' fees and legal expenses and other professional fees and expenses arising from or related to the Postpetition Financing or any actions taken in connection with these Chapter 11 cases, including without limitation, negotiating, documenting, closing, monitoring, and obtaining of Court approval of the Postpetition Financing and all proceedings in connection with the interpretation, amendment, modification, enforcement, or carrying out of the Postpetition Financing or this Interim Order at any time, and all expenses, costs and charges in any way or respect arising in connection therewith or related thereto (collectively, the "Reimbursable Fees") may be funded through loans under the Loan Agreement and paid in accordance with the Loan Agreement (and shall reduce accordingly the principal amount available under the Loan Agreement, to the extent that they are provided for in the Budget). The Debtors may request at any time a statement of the Reimbursable Fees funded through loans under the Loan Agreement and the DIP Lender will provide a statement of those Reimbursable Fees subject to the right of the Debtors to object in writing within twenty (20) days of receiving such a statement from the DIP Lender.

13. In addition to the Events of Default set forth in the Loan Agreement, an Event of Default under the Loan Agreement shall occur upon the commencement of any suit, adversary proceeding, or other action (including any actions pursuant to Chapter 5 of the Bankruptcy Code)

against the DIP Lender or its affiliates by, or (with approval of the Court) on behalf of, the Debtors, the Debtors' estates, their creditors, or their respective successors and assigns, including but not limited to any trustee appointed in these cases.

14. Upon the occurrence and during the continuance of an Event of Default (subject to the Carve-Out), the DIP Lender may take all or any of the following actions without further modification of the automatic stay pursuant to § 362 of the Bankruptcy Code (which is hereby deemed modified and vacated to the extent necessary to permit such exercise of rights and remedies and the taking of such actions) or further order of or application to this Court: (a) terminate the Loan Agreement and Postpetition Financing; (b) declare the principal of and accrued interest, fees and other liabilities constituting the Obligations to be immediately due and payable; (c) subject to the Carve-Out, take possession of funds by the Debtors in their General Account, for application to the Obligations; and/or (d) take any other action or exercise any other right or remedy permitted to the DIP Lender under the Loan Documents, under this Interim Order, or by operation of law; provided that the DIP Lender shall provide the respective counsel for the Debtors, the U.S. Trustee for Region 3, and any creditors' committee appointed in these Chapter 11 cases with five (5) business days notice with respect to any action taken under clauses (c) or (d) of this paragraph. Notwithstanding anything herein to the contrary (but subject to the Carve-Out), the DIP Lender may also exercise any and all rights and remedies without further modification of the automatic stay from and after a Termination Date that occurs as a result of something other than a Default or Event of Default under the Loan Agreement as provided in paragraph 6 of this Interim Order, and the Debtors waive any right to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of the DIP Lender set forth in this Interim Order and in the Loan

Documents; provided that such waiver shall not preclude the Debtors from contesting whether a Default or Event of Default has occurred and is then continuing.

15. The Debtors are authorized to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements in addition to the Loan Documents, as the DIP Lender may reasonably require, as evidence of and for the protection of the Obligations, or which otherwise may be deemed reasonably necessary by the DIP Lender to effectuate the terms and conditions of this Interim Order and the Loan Documents. The Debtors and the DIP Lender are hereby authorized to implement, in accordance with the terms of the Loan Agreement, any modifications of the Loan Agreement which are not material and adverse to the Debtors or their estates without further order of this Court.

16. The Court having found that, based on the record presented by the Debtors, the DIP Lender is extending credit and making Loans to the Debtors in good faith, the DIP Lender is entitled to the full protection of § 364(e) of the Bankruptcy Code with respect to the Obligations under the Postpetition Financing and the Superpriority Claims created or authorized by this Interim Order, in the event that this Interim Order or any authorization contained herein is subsequently stayed, vacated, reversed or modified on appeal. Any subsequent stay, modification, reversal or vacation of this Interim Order shall not affect the validity of any obligation of the Debtors to the DIP Lender incurred pursuant to this Interim Order. Notwithstanding any such stay, modification, reversal or vacation, all Loans made pursuant to this Interim Order and the Loan Agreement and all Obligations incurred by the Debtor pursuant hereto or the Loan Documents prior to written notice to the DIP Lender of the effective date of such stay, modification, reversal or vacation, shall be governed in all respects by the original provisions hereof and the DIP Lender shall be entitled to all the rights, privileges and benefits, including without limitation, the Superpriority Claims granted herein.

17. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan in the Debtors' Chapter 11 cases (and the Obligations shall not be discharged by the entry of any such order or pursuant to § 1141(d)(4) of the Bankruptcy Code, the Debtors having waived such discharge); (b) converting these Chapter 11 cases (or either of them) to cases under Chapter 7 of the Bankruptcy Code; or (c) dismissing these Chapter 11 cases (or either of them). If an order dismissing these Chapter 11 cases (or either of them) under § 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims granted to the DIP Lender pursuant to this Interim Order and the Loan Documents shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all obligations in respect thereof shall have been paid and satisfied in full (and that such Superpriority Claims shall, notwithstanding such dismissal, remain binding on all parties-in-interest), and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims referred to in subparagraph (x) of this paragraph. The terms and provisions of this Interim Order as well as the Superpriority Claims granted pursuant to this Interim Order and the Loan Documents shall continue in full force and effect notwithstanding the entry of an order of the type described in clauses (a), (b) or (c) of this paragraph.

18. The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtors, the Debtors' estates, and their respective successors and assigns, including but not limited to any trustee or other fiduciary hereafter appointed in these cases as a legal representative of the Debtors or their estates. In the event of a direct conflict between the terms of this Interim Order and the terms of the Loan Agreement or the other Loan Documents, the terms of this Order shall control.

19. Effective upon entry of a Final Order, and with a full reservation of any rights (whether asserted directly or derivatively on behalf of the Debtors and their estates) of any Committee, or other party in interest, as provided in the following paragraph, each of the Debtors hereby forever releases, waives, and discharges the Lender and its Affiliates (whether in their prepetition or postpetition capacity), together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Debtors or any aspect of the prepetition relationship between any Debtors, on the one hand, and any or all of the Released Parties, on the other hand, including, without limitation, any claims or defenses as to the extent, validity or priority of the Lender's claims against the Debtors, any actions, claims, or defenses under chapter 5 of the Bankruptcy Code, and any other claims and causes of action that comprise property of the estate (within the meaning of section 541 of the Bankruptcy Code) of either or both of the Debtors or which the Debtors otherwise have standing to assert (all such claims, defenses, and other actions described in this Paragraph are collectively defined as the "Claims and Defenses"). Nothing contained in this subparagraph shall affect the rights of any Committee, or any other party in interest, to undertake any action with respect to any investigation or prosecution of Claims and Defenses that is permitted by paragraph 20 of this Order.

20. (a) The releases set forth in paragraph 19 of this Order and section 9.2 of the Loan Agreement (collectively, the "Releases") are for all purposes subject to the rights ("Third Party Investigation Rights") of any party in interest (including any trustee elected or appointed in these Cases and including any other party granted standing to assert rights or causes of action derivatively on behalf of the Debtors or their estates), other than any Debtors, to file a complaint (a "Challenge Complaint") pursuant to Bankruptcy Rule 7001 seeking to (i) invalidate, subordinate, or otherwise

challenge the prepetition claims of Lender against the Debtors, or (ii) otherwise assert any claim or cause of action that otherwise would be subject to the Releases; provided, however, that any Challenge Complaint must be filed in this Court (y) by the Committee within the later of 60 days after appointment of the Committee in these Cases and 75 days after entry of this Interim Order; or (z) by any other person or entity within 75 days after entry of this Interim Order.

(b) To the extent that no Challenge Complaint is timely filed, the Releases shall be binding and effective for all purposes, then and any and all Claims and Defenses against any of the Released Parties shall be, without further notice to any parties or order of the Court, conclusively deemed to have been forever relinquished, released, and waived.

(c) To the extent that a Challenge Complaint is timely filed, then (i) any and all Claims and Defenses against any of the Released Parties shall be deemed, immediately and without further action, to have been forever relinquished, released, and waived, except with respect to Claims and Defenses that are specifically asserted in such Challenge Complaint, (ii) to the extent of any Claims and Defenses that are specifically asserted in such Challenge Complaint, the Releases shall have no effect in such litigation, (iii) all litigation or other proceedings outside of this Court to enforce any Claims and Defenses shall be or remain, as the case may be, stayed, and (iv) the Releases shall be binding and effective except only to the extent inconsistent with any final judgment entered on such Challenge Complaint. Nothing in this Order shall confer standing upon any official committee or any other person or entity to bring, assert, commence, continue, prosecute, or litigate any Claims and Defenses against any Released Parties, but the right of any person or entity to file a motion for such standing and the rights of the Debtors, any Committee, and any other party in interest to oppose such a motion are expressly preserved subject to the deadlines described above.

21. Notwithstanding Fed. R. Bankr. P. 7062, the terms and conditions of this Interim Order shall: (a) be immediately enforceable pursuant to Fed. R. Bankr. P. 8005; and (b) not be

stayed absent (1) an application by a party in interest for such stay in accordance with Fed. R. Bankr. P. 8005, and (2) entry of an order after hearing on notice to the Debtors and the DIP Lender.

22. The Debtors shall, on or before _____, 2010, mail copies of a notice of entry of this Interim Order, together with a copy of this Interim Order to the parties who originally received a copy of the Motion, any party that has filed a request for notice with this Court, and counsel for any statutory committee appointed in these Chapter 11 cases. The notice of entry of the interim order shall state that any party in interest objecting to the entry of a Final Order on the Motion shall file a written objection with the Clerk for the United States Bankruptcy Court for the District of Delaware, and shall serve upon the same counsel for the Debtors, counsel for the U.S. Trustee for Region 3, counsel for any official committee of unsecured creditors, and counsel for the DIP Lenders, on or before _____, 2010 at 4:00 p.m. Eastern Standard Time.

23. The Final Hearing on the Motion shall be held on _____ ____, 2010 at __:__ _.m.

Dated: _____, 2010  
      Wilmington, Delaware     THE HONORABLE _____  
                                           UNITED STATES BANKRUPTCY JUDGE