IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>WE THE PEOPLE USA, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case Nos. 10-10503-KJC, *et seq.*<br>(joint administration pending)<br><br>**Hearing date: March 16, 2010, 3:30 p.m.**<br>**Objections due by: March 9, 2010, 4:00 p.m.** |

## DEBTORS' APPLICATION FOR AUTHORITY TO EMPLOY EXECUTIVE SOUNDING BOARD ASSOCIATES, INC., *NUNC PRO TUNC* TO PETITION DATE

We The People USA, Inc. and We The People LLC (the "Debtors"), as debtors and debtors in possession, by their proposed undersigned attorneys, file this Application for Authority To Employ Executive Sounding Board Associates, Inc., Nunc Pro Tunc To Petition Date, and in support hereof state as follows:

### JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

2. On February 19, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have managed their affairs as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. In March 2005, We The People USA, Inc. ("WTP USA") acquired substantially all the assets of the We The People franchise system. In July 2007, We The People LLC ("WTP LLC"), a wholly-owned subsidiary of WTP USA, was assigned and assumed certain assets and

obligations of WTP USA.  The Debtors operate a business providing document preparation services to unrepresented persons throughout certain areas of the United States in uncontested legal matters such as divorces, trusts, incorporations, wills, and powers of attorney.  The Debtors' business model consists of a document processing operation that receives orders from independent We The People franchisees, completes a typed document in accordance with the orders, and returns the document to the franchisee for a document processing fee.  The Debtors also provide "fill-in the blank" form documents to We The People franchisees for sale to the general public.  The Debtors operate strictly as a franchise system, and do not themselves operate any We The People stores.

4. The Debtors have been unable to operate their business model profitably since the business was acquired, in part as a result of the expense of litigation initiated by certain past and present franchisees and customers of franchisees.  While the Debtors believe that they have meritorious defenses to those actions, overwhelming defense and legal costs have contributed to the Debtors' substantial operating losses.  In 2009, the Debtors suffered a net loss of $2,428,019 on gross revenues of approximately $1,379,609.  By the end of 2009, the Debtors' monthly operating revenues were down to approximately $13,185.75.

5. Because the Debtors were unable to meet their expenses with operational cash flow before the Petition Date, they relied upon unsecured intercompany loans from Dollar Financial Group, Inc. ("DFG"), the parent company of WTP USA.  On the Petition Date, the total amount owed to DFG by the Debtors was approximately $38 million.

6. Over the last year, most of the Debtors' franchises have closed, either as a result of unilateral closure by the franchisee or by virtue of a franchise termination agreement.  On the

Petition Date, the Debtors had eight remaining operating franchisees. Those franchisees operate a total of eight stores, located in New York, California, Missouri, and Utah.

7. The Debtors have filed these Chapter 11 cases in order to (i) operate or conduct an orderly wind-down of their business for the benefit of all parties-in-interest while they attempt to formulate a Chapter 11 plan, (ii) preserve any value in their intellectual property and other assets for the benefit of their estates, and (iii) minimize the impact of any wind-down on franchisees and their customers.

## RELIEF REQUESTED AND BASIS THEREFOR

8. In light of the size and complexity of their businesses, as well as the exigencies of their circumstances, the Debtors have determined that the services of experienced restructuring consultants will substantially enhance their attempts to wind down their businesses in an orderly and efficient manner. Before the Petition Date, the Debtors determined that it was in their best interests to retain an independent Chief Restructuring Officer to oversee the Debtors' reorganization efforts. The individual chosen for that position–Robert D. Katz, CTP, MBA, CPA, a Managing Director of ESBA–was engaged by the Debtors on or about February 17, 2010 in anticipation of their bankruptcy filings. Mr. Katz will act under the direction, control and guidance of the Debtors' boards of directors, which have expressly approved his engagement as Chief Restructuring Officer.

9. Mr. Katz is a Certified Turnaround Professional (CTP) who specializes in helping operationally and financially distressed organizations through in and out-of-court workouts and Chapter 11 reorganizations. Mr. Katz has been with ESBA for eighteen (18) years and a Managing Director for the last eleven (11) years. In addition, Mr. Katz has a BSE with a concentration in Accounting and Organizational Behavior from Wharton School of Business at

the University of Pennsylvania and an MBA in Finance from Temple University. He has strategic and hands-on experience, both as a CFO, a CRO, and a management consultant in finance, marketing and operations; he has served as an interim officer in multiple situations. Mr. Katz's industry experience includes: Mail Order/Publishing; Service Industries, Multi-store Retailers, Real Estate/Property Management, Steel Fabrication, Manufacturers, Not-for-Profits and others. ESBA has already begun familiarizing himself with the Debtors' businesses, personnel, operations, assets, liabilities, books and records and other important matters affecting the Debtors' estates.

10. In the course of performing his duties as Chief Restructuring Officer, Mr. Katz may, from time to time, require the support of other employees of ESBA as may be deemed necessary and appropriate to fulfill the Debtors' responsibilities in the exercise of Mr. Katz's business judgment as Chief Restructuring Officer. A copy of ESBA's engagement letter dated February 22, 2010 setting forth the scope of ESBA's retention (the "Engagement Letter") is attached hereto and incorporated herein as **Exhibit A**.

11. The employment of ESBA is necessary to enable the Debtors to faithfully execute their duties as debtors-in-possession. In addition to supplying the Debtors with an executive officer, it is proposed that ESBA will provide the following services to the Debtors:

- Prepare statements and schedules and other financial and operational information as directed by the Chief Restructuring Officer or other stakeholders of the Debtors;

- Prepare information, schedules, reports and other data upon request of, and as required by, the Court, the Debtors' attorneys, any official committee(s) formed in these cases, the Office of the United States Trustee, and other governmental agencies or their representatives;

- Testify in Bankruptcy Court and participate in hearings as requested;

- Assist as requested in managing the work flow, work product, court deadlines and interaction with other court-related professionals and

> personnel including without limitation the Office of the United States Trustee; and
>
> - Participate in other projects as requested by the Debtors, their Board of Directors, the Chief Restructuring Officer, or the Debtors' attorneys.

The Debtors are hereby requesting approval to engage ESBA subject to the terms of the Engagement Letter pursuant to 11 U.S.C. § 327(a) *nunc pro tunc* to the Petition Date.

12. The Debtors selected ESBA as their restructuring consultants because of ESBA's extensive knowledge and experience in providing consulting services to debtors and debtors-in-possession. ESBA is a preeminent turnaround management consulting firm that provides specialized management and consulting services to troubled companies. ESBA's turnaround experience includes working with both public and private companies bankruptcies and out-of-court workouts. For more than thirty years, ESBA has provided management and consulting services to clients seeking to wind down their businesses in an orderly and efficient manner. Because Mr. Katz has been serving as Debtors' Chief Restructuring Officer since prior to their bankruptcy filings, ESBA has already begun to obtain extensive familiarity with the Debtors' business operations and the issues the Debtors will face as they attempt to wind down their operations. The Debtors believe that ESBA has significant relevant experience and is both well-qualified and suited to assist the Debtors with their restructuring efforts. Accordingly, the Debtors submit that the retention of ESBA on the terms and conditions set forth herein is necessary and appropriate and is in the best interests of the Debtors, their estates, creditors, and all other parties in interest.

13. ESBA has extensive experience in providing restructuring and financial advisory services in reorganization proceedings, and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. See, e.g., In re Chiyoda America, No. 09-15059 (Bankr. S.D.N.Y. Aug. 19, 2009); In re DeCoro

USA Ltd., No. 09-11173 (CSC) (Bankr. D. Del. April 2, 2009); In re Delanco Healthcare-Belmont & Parkside LP, No. 09-29523 (JHW) (Bankr. D.N.J. July 28, 2009); In re Alset Owners LLC, No. 09-11960 (BMC) (Bankr. D. Del. June 5, 2009); In re BT Tires Group Holding, LLC, No. 09-11173 (CSS) (Bankr. D. Del. April 2, 2009); In re EZ Lube, LLC, No. 08-13256 (CSS) (Bankr. D. Del. Dec. 9, 2008); In re HPG International, No. 09-10231 (BLS) (Bankr. D. Del. Jan. 23, 2009); In re Jane & Company, No. 09-11204 (KJC) (D. Del. April 6, 2009); In re Medifacts, No. 07-10110 (PJW) (Bankr. D. Del. Jan. 28, 2007); In re Onsite Sourcing Inc., No. 09-10816 (RGM) (Bankr. E.D. Va. Feb. 4, 2009); In re Proliance International LLC, No. 09-12278 (CSS) (Bankr. D. Del. July 2, 2009); Government Telecommunications, Inc., 09-14595 (SSM) (E.D. Va. June 9, 2009); In re Tally Genicom, LP., No. 09-00105 (D. Del. March 20, 2009). In

14. ESBA has stated its desire and willingness to act in this case and to render the necessary professional services as restructuring consultants to the Debtors. ESBA and its affiliates shall not act in any capacity in connection with the above-captioned cases other than as contemplated herein.

15. To the best of the Debtors' knowledge, and except as disclosed herein and in the declaration of Mr. Katz (the "Affidavit," attached hereto as **Exhibit B**), ESBA has no connection with, and holds no interest adverse to, the Debtors or their estates in the matter on which ESBA is proposed to be engaged, except that (i) on or about February 17, 2010, Mr. Katz was engaged as Chief Restructuring Officer of the Debtors as described above; and (ii) ESBA may have rendered services, and may continue to render services, to certain of the Debtors' creditors or other parties-in-interest in matters wholly unrelated to these Chapter 11 cases. To the best of the Debtors' knowledge, except as otherwise disclosed herein and in the Affidavit, ESBA is a "disinterested person" as that phrase is defined in 11 U.S.C. § 101(14) and as modified by 11

U.S.C. § 1107(b). The Debtors respectfully submit that the retention of ESBA is necessary and in the best interests of the Debtors and their estates.

16. ESBA has received a prepayment in the amount of approximately $40,000.00 (the "Retainer") from the Debtors. This prepayment was funded by the Debtors' parent, DFG, in contemplation of and in connection with services to be rendered by ESBA and Mr. Katz in the Debtors' Chapter 11 cases. The balance of the Retainer (after deduction of prepetition fees and expenses to which the Retainer was applied) will be held by ESBA as collateral security to insure payment of the invoices. At the conclusion of the engagements, any unused portion of the Retainer will be returned to DFG.

17. The Debtors understand that, for all services performed and expenses incurred after the Petition Date, ESBA intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure for the United States District Court for the District of Delaware (the "Local Rules"), and orders of the Court. The Debtors have filed a motion for entry of an administrative order allowing for the monthly payment of requested fees in interim amounts not less than eighty percent (80%) of the amount requested, and ESBA intends to be treated as a professional under such administrative order.

18. Subject to Court approval in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and further order of this Court, the Debtors propose to compensate ESBA at its employees' current hourly billing rates for services rendered. The current hourly billing rate for Mr. Katz is $400.00. Other consultants may be utilized from time to time on an as-needed basis at hourly rates currently ranging from $300.00 to $390.00. Consistent with the terms of the Engagement Letter, the hourly rates of Mr. Katz and other

ESBA personnel are subject to periodic adjustments to reflect economic and other conditions. In addition to the hourly fees, ESBA will be reimbursed by the Debtors for its out-of-pocket expenses according to its customary reimbursement policies consistent with the Engagement Letter.

19. The overall compensation structure described herein and in the Engagement Letter is comparable to the compensation generally charged by turnaround consulting firms of a similar stature to ESBA for similar engagements, both in and out of court. Mr. Katz shall not receive direct compensation or bonuses from the Debtors for his service as Chief Restructuring Officer. Rather, Mr. Katz's hourly compensation shall be payable to ESBA, and Mr. Katz's will continue to draw his salary and receive benefits from ESBA. Likewise, the personnel supplied by ESBA will remain employed by ESBA and will not be on the Debtors' payroll, so that the Debtors will not be subject to additional payroll taxes or benefits payable on his account.

20. The Debtors believe that the consideration to be paid to ESBA is fair and reasonable under the circumstances of this case. DFG, which is the Debtors' largest creditor and equity holder and therefore assumes a significant risk if estate assets become unavailable, has consented to ESBA's retention and has provided funding in the debtor-in-possession financing budget for this expense. The Debtors are also informed that the amounts payable to ESBA are fair and reasonable in light of the customary fees paid to turnaround consultants in this district.

### *NUNC PRO TUNC* ENGAGEMENT

21. Since the Petition Date, the Debtors have needed to utilize the services of ESBA to assist in transitioning the companies into bankruptcy and fulfilling their obligations as debtors-in-possession. As noted above, DFG–the party most likely to object to such utilization–has been aware of plans to engage ESBA's assistance since before the Petition Date. The Debtors

therefore believe that just cause exists to approve ESBA's retention *nunc pro tunc* to the Petition Date. *Nunc pro tunc* retention has routinely been approved and applicable legal authority supports ESBA's *nunc pro tunc* retention under the circumstances. *See, e.g.*, *F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988); *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's counsel and real estate agent as of petition date was permissible and not an abuse of discretion).

## NOTICE AND PRIOR APPLICATIONS

22. Notice of this Motion is being given to: (i) the Office of the United States Trustee; (ii) any parties who have filed requests for notice under Fed. R. Bankr. P. 2002 as of the date of service of such notice; (iii) counsel for DFG; (iv) the twenty (20) largest unsecured creditors of the Debtors at their last known addresses; and (v) all known secured parties.

WHEREFORE, the Debtors respectfully request that the Court enter an order:

(A) Authorizing the Debtors to employ ESBA pursuant to 11 U.S.C. § 327(a) *nunc pro tunc* to the Petition Date; and

(B) Granting such further relief as this Court deems just and proper.

Dated: February 25, 2010  
Wilmington, Delaware

Respectfully submitted,

PINCKNEY, HARRIS & WEIDINGER, LLC

 /s/ **Adam Hiller**  
Adam Hiller (DE No. 4105)  
Donna Harris (DE No. 3740)  
1220 North Market Street, Suite 950  
Wilmington, Delaware 19801  
(302) 504-1497 telephone  
(302) 442-7046 facsimile

*Proposed attorneys for the Debtors*